# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| TERRANCE WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | )  No. 2:20-cv-02254-JTF-atc |
| v. | ) |
| | ) |
| DARRIUS DAVIS, ET AL., | ) |
| | ) |
| Defendants. | ) |

**ORDER DISMISSING COMPLAINT IN PART & PROCEEDING IT IN PART (ECF 1);
MODIFYING THE DOCKET;
ORDERING ISSUANCE OF PROCESS FOR DAVIS, HARRELL & ECHOLS;
AND DENYING REQUEST FOR APPOINTMENT OF COUNSEL (ECF 3)**

On March 31, 2020, Plaintiff Terrance Williams, booking number 19115855, who is incarcerated at Shelby County Criminal Justice Center (SCCJC), in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On April 2, 2020, the Court granted Plaintiff pauper status. (ECF No. 5.)

Plaintiff sues: correctional officer Darrius Davis; Shelby County Sheriff Floyd Bonner; the "Board of Supervisor[s]"; Officer Harrell[1]; and Sgt. Echols. (ECF No. 1 at PageID 1 & 2.) Williams does not indicate whether he sues Defendants in their individual or official capacities. (*Id.*) The Clerk is directed to modify the docket to add Shelby County as a Defendant.

---

[1] It is unclear from Plaintiff's handwritten complaint whether he names a SCCJC employee with the last name of Harvell or Harrell. For discussion purposes, the Court construes Plaintiff's handwriting to indicate Harrell. If Plaintiff intended otherwise, he shall notify the Court of the correct spelling of this Defendant's name within fourteen (14) days of the date of this order.

Williams's complaint arises from two separate incidents: (1) an August 23, 2019 search and assault of him at SCCJC (the Incident) by Defendants Davis, Harrell, and Echols (the Force Claim); and (2) Davis's attendance at Plaintiff's November 21, 2019 court hearing at General Sessions Court (the Harassment Claim). (ECF No. 1 at PageID 2.) Williams grieved the August 23 Incident, and the investigation was pending at the time he filed his complaint. (*Id.*)[2] He seeks $1.5 million in compensatory and punitive damages, as well as injunctive relief to "prevent [Defendants] from committing these actions to anyone else." (*Id.* at PageID 3.)

**I.     LEGAL STANDARDS**

    **A.     Screening Requirements**

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint —

    (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

    (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether Williams's complaint states a claim on which relief may be granted, the Court applies the standards of Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts a plaintiff's "well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an

---

[2] Under 42 U.S.C. § 1997e(a), plaintiffs asserting claims under § 1983 must first exhaust them administratively before proceeding to sue in court. *See Jones v. Bock*, 549 U.S. 199, 211 (2007). Because "[f]ailure to exhaust administrative remedies is an affirmative defense under the Prison Litigation Reform Act," *Napier v. Laurel Cnty.*, 636 F.3d 218, 225 (6th Cir. 2011), a case cannot be dismissed at the screening stage for failure to exhaust administrative remedies. *See Grinter v. Knight*, 532 F.3d 567, 578 (6th Cir. 2008).

entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

**B.** **Requirements To State A Claim Under 42 U.S.C. § 1983**

Plaintiff filed his complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, (2) which was committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

## II.  ANALYSIS

The Court addresses several initial matters regarding Williams's claims.

First, to the extent he intends to assert an official capacity claim against Defendants Davis, Bonner, Harrell, and Echols, those claims are against their employer, Shelby County. The complaint, however, does not state a valid § 1983 claim against the County.  A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994).  A municipality may be held responsible for a constitutional deprivation only if there is a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).  A plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).  "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).  Williams does not describe any Shelby County policy or custom, much less one that is

unconstitutional or pursuant to which Davis, Bonner, Harrell, and Echols acted. He therefore does not state a claim against Shelby County or any Defendants in their official capacity.

Second, Williams names the "Board of Supervisors" as a Defendant (ECF No. 1 at PageID 1), but he does not explain his basis for doing so. To the extent he seeks to hold the Board liable as part of the SCCJC, his claims fail. A jail is not a "person" subject to suit under § 1983. *Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) ("the Shelby County Jail is not an entity subject to suit under § 1983"). Even if the Court were to construe the Board-related claims as against Shelby County, that does not alter the result. As explained *supra*, Plaintiff does not state a valid § 1983 claim alleging Shelby County municipal liability. Furthermore, Williams cannot use the *respondeat superior* doctrine to hold Shelby County liable under § 1983 for the conduct of the Board. A § 1983 damages suit requires that a defendant acting under the color of state law be personally involved in the alleged constitutional deprivation. *See Heyerman v. Cnty. Of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012); and *Murphy v. Greiner*, 406 F. App'x 972, 974 (6th Cir. 2011). For all of these reasons, Williams fails to state a claim for relief against the Board of Supervisors.

Finally, as to Williams's claims against Sheriff Bonner in his individual capacity, Plaintiff alleges no wrongdoing by Bonner. (ECF No. 1 at PageID 4-5.) When a complaint fails to allege any action by a defendant, it necessarily fails to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570. Moreover, Williams cannot sue Bonner merely because of his position as Sheriff. Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

5

Constitution." *Iqbal*, 556 U.S. at 676. Williams fails to plead what actions Sheriff Bonner took, or failed to take, that violated Plaintiff's rights. Thus, he does not state a claim against him in his individual capacity.

### A. Force Claim

Williams alleges that on August 23, 2019, Davis strip-searched him "on camera" at SCCJC and "found nothing." (ECF No. 1 at PageID 4.) Williams called "for another officer to help me." Echols ordered him to be quiet and "winked her eye" at Davis. Davis and Harrell walked Williams to the janitor closet "just to get me off camera." (*Id*.) Once there, Harrell held down Williams, and Davis repeatedly hit him while accusing Plaintiff of assaulting Davis's sister. (*Id*.) Davis and Harrell stopped when Williams started to bruise and vomit. Then they strip-searched him again. Harrell held a mace bottle to Plaintiff's face, and Davis spread Plaintiff's buttocks to a point of pain. (*Id*. at PageID 4-5.) On September 9, 2019, Sergeant Jones and administrator Mrs. Dixon asked Williams to sign an incident report. He refused to do so because it characterized the Incident as "insubstantial." (*Id*. at PageID 5.)

Plaintiff's claim that he was sexually assaulted by prison guards in an act of excessive force implicates the Eighth Amendment's prohibition against cruel and unusual punishment. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). In determining whether a prison official has violated the Eighth Amendment's prohibition against excessive force, courts apply a two-part inquiry consisting of objective and subjective components: (1) whether the conduct, in context, is sufficiently serious to offend "contemporary standards of decency," *Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992); and (2) "whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id*. To satisfy the objective component, an inmate need not prove a serious injury but the extent of the harm may

be probative of whether the force was plausibly "thought necessary" in the situation. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The subjective prong requires consideration of the need for the use of force, the relationship between that need and the force used, the threat reasonably perceived by the official and the extent of the injury. *Hudson*, 503 U.S. at 7. Good faith in the use of physical force for a valid penological objective will rarely, if ever, violate the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

The initial inquiry here is whether the force used in the Incident was objectively harmful enough to establish a constitutional violation "as measured by society's contemporary standards of decency." *See McMillian,* 503 U.S. at 7-8. Pat-down searches are a routine and necessary part of prison life. *See, e.g.*, *Braasch v. Gunter*, No. 83-L-459, 1985 WL 3530, *7 (D. Neb. July 15, 1985). "Unquestionably, 'detect[ing] and deter[ring] the possession of contraband' is a legitimate penological objective [and a]bsent proof to the contrary, we must assume that a search of a prisoner is initiated in an effort to detect and deter contraband." *Stoudemire v. Michigan Dep't of Corr.,* 705 F.3d 560, 572 (6th Cir. 2013) (quoting *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 1510, 1515 (2012)). "[P]at-down searches of an inmate's groin, buttocks, and genital areas … [may be] necessary because these specific areas are commonly used to hide weapons, drugs and contraband." *Jacks v. Dyberg,* No. 11-1316, 2013 WL 2351334, *8 (C.D. Cal. May 16, 2013).[3] Such searches do not violate "evolving standards of decency that mark the progress of a maturing society." *Rhodes,* 452 U.S. at 346.

In Williams's case, his factual allegations plausibly suggest more than just a routine pat-down search for security. Davis's first strip-search of Williams in the plain sight of SCCJC's

---

[3] *See also Wolfe v. Beard*, No. 10-2566, 2013 WL 2370572, *12 (E.D. Pa. May 31, 2013) (a "frisking officer's contact with an inmate's genitals or private areas during a single pat-down search is insufficient to constitute an Eighth Amendment violation") (listing cases).

cameras seems routine and does not run afoul of the Eighth Amendment. However, nothing in the complaint suggests a legitimate penological basis for the second search in the janitor closet, hidden from view. Not having found anything dangerous or unlawful on Williams during the first search, Davis and Harrell were unjustified in taking him to a closet, closing the door, and proceeding to assault him while he was restrained. The factual allegations do not indicate that jail safety was threatened at the time of the Incident. Furthermore, the surreptitious nature of the second search and the alleged assault supports Williams' claim that Defendants' force was unlawful, and solely for the purpose of causing harm. Nothing in the complaint suggests that Williams provoked officers or that he was otherwise threatening them. The complaint plausibly suggests that the Incident was motivated by ill-will against Plaintiff. Williams states that Davis and Harrell "sexually assaulted, physically assaulted, [and] abused me … because of … a [past] argument that [had] turned into a domestic situation" between Williams and Davis's sister. (ECF No. 1 at PageID 4-5.) In sum, the alleged second search was not the sort of routine pat-down that lasts only seconds to search for contraband or weapons. *See*, *e.g.*, *Henthorn v. Hester,* No. 94-5090, 1995 WL 299031, *2 (6th Cir. May 16, 1995).[4]

Williams further states that Defendant Echols was aware of, and condoned, the second search. (ECF No. 1 at PageID 4 ("Echols gave [Davis] the okay [to conduct a second search] and winked her eye").) Plaintiff states that Echols gave her approval for Davis and Harrell to take him to the closet in order to conduct the Incident out of security cameras' sight. As alleged, Echols

---

[4] Williams characterizes the Incident as a "sexual assault[]," "rape" and "molestation," although he does not allege penetration or any sexual comments made to him during the Incident. (ECF No. 1 at PageID 4-5.) The labels he assigns to the Incident are not determinative for screening purposes. Rather, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 6.

faces potential liability under § 1983 for failing to take reasonable steps to protect Williams from unconstitutionally excessive force. In the context of an Eighth Amendment failure-to-protect claim, "a correctional officer who observes an unlawful beating may . . . be held liable under § 1983 without actively participating in the unlawful beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). The facts alleged must show that the officers "provid[ed] an opportunity for the attack and d[id] nothing" or remained "idly by while a known attack took place without intervening." *Carico v. Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003). Williams's complaint sufficiently pleads these elements as to Echols.

For all of these reasons, Plaintiff alleges a sufficiently serious deprivation from the Incident so as to satisfy the Eighth Amendment's two prongs. The complaint's Force Claim shall proceed against Echols, Davis and Harrell.

### B. Harassment Claim

Aside from the Incident, Williams also alleges that Davis sat "in the audience" at Plaintiff's November 21, 2019 court hearing. (ECF No. 1 at PageID 6 ("This case has nothing to do with Davis or any family member of his").) He alleges that Davis's presence amounts to "taunting[,] stalking and harassing" of Plaintiff. (*Id.*) Williams is "not liking these incidents." (*Id.*) However, he neither identifies the constitutional rights supposedly violated nor describes any injuries. (*Id.*) He premises his accusation exclusively on Davis's presence in court. (*Id.*)

These contentions are insufficient to state a claim upon which relief may be granted under § 1983. Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *See Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that even harassment that constitutes "shameful and utterly unprofessional behavior" is insufficient to constitute cruel and unusual

9

punishment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment"). Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Thus, Plaintiff's allegations of Davis's unprofessional conduct do not rise to a deprivation of constitutional dimensions. *See Ivey*, 832 F.2d at 954-55. Williams does not allege that Davis threatened him with serious physical injury. If anything, the alleged conduct falls into the category of petty harassment, which is not constitutionally actionable. *See e.g., Vasquez v. City of Hamtramck,* 757 F.2d 771, 773 (6th Cir. 1987).

Insofar as Williams seeks compensation for emotional distress caused by Davis's alleged harassment and stalking, Plaintiff's efforts are similarly unavailing. The PLRA requires that any action for emotional injury is barred unless the prisoner can show physical injury. 42 U.S.C. § 1997(e). The physical injury need not be significant, but it must be more than *de minimus* for an Eighth Amendment claim to proceed. *See Adams v. Rockafellow,* 66 F. App'x 584, 586 (6th Cir. 2003) (citation omitted) Since Plaintiff has not alleged that he suffered any injury from the harassment, he has failed to plead a claim that meets the PLRA's threshold.

Accordingly, the complaint's Harassment Claim is dismissed.

### III. AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal of some of his claims under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31,

37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court denies Plaintiff leave to amend. The Harassment Claim fails to state a constitutional claim for relief, no matter the facts alleged.

### IV. MOTION FOR COUNSEL

On March 31, 2020, Plaintiff filed a motion for appointment of counsel based on his "lack of knowledge for the law." (ECF No. 3 at PageID 15.)

Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, "[t]here is no constitutional or ... statutory right to counsel in federal civil cases." *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993). Rather, the appointment of counsel in a civil proceeding is a privilege justified only in exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993). The decision to appoint counsel for an indigent litigant in a civil case is a matter vested within the broad discretion of the Court. *Childs v. Pellegrin*, 822 F.2d 1384 (6th Cir. 1987). *See also Lavado*, 992 F.2d at 604-05. Generally, a court will only appoint counsel in "exceptional circumstances." *Id*. at 605-06. *Accord Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977).

To determine whether the case meets this standard, the Court examines the pleadings and documents to assess the merits of the claims, the complexity of the case, the *pro se* litigant's prior efforts to retain counsel, and his ability to present the claims. *Henry v. City of Detroit Manpower*

11

*Dep't*, 763 F.2d 757, 760 (6th Cir. 1985). *See also Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) ("The key [to determining whether exceptional circumstances exist] is whether the pro se litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help").

After careful consideration of Williams's motion (ECF No. 3), including the type and nature of the case, its complexity, and his ability to prosecute his claim, counsel is not necessary at this time to ensure Plaintiff's claims are fairly heard. *See Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). The issues in this case are not complex, and the complaint's assertions do not demonstrate exceptional circumstances warranting appointment of counsel at this time. *See Kennedy v. Doyle*, 37 F. App'x 755, 757 (6th Cir. 2002). For these reasons, the motion (ECF No. 3) is therefore DENIED without prejudice to refiling, if necessary, at a later, appropriate time.

V.      **CONCLUSION**

For the reasons explained above, the complaint's Harassment Claim is **DISMISSED WITH PREJUDICE** for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and leave to amend is **DENIED**. Pursuant to 28 U.S.C. § 1915(a)(3) the Court **CERTIFIES** that, for the reasons expressed herein, an appeal of this order as to the complaint's Harassment Claim would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

It is further **ORDERED** that the Clerk shall issue process for Defendants Davis, Harrell, and Echols and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Davis, Harrell, and Echols pursuant to Fed. R. Civ. P. 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further **ORDERED** that Williams shall serve a copy of every subsequent document he files in this case on the attorneys for Defendants Davis, Harrell, and Echols, or on them personally if they are unrepresented.  Williams shall make a certificate of service on every document he files.  Williams shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[5]  Williams is reminded that he must promptly notify the Clerk of any change of address or extended absence.  Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

**IT IS SO ORDERED**, this 24th day of November 2020.

> *s/John T. Fowlkes, Jr.*
> JOHN T. FOWLKES, JR.
> UNITED STATES DISTRICT JUDGE

---

[5]  A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.